**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000068
18-FEB-2020
07:46 AM**

NO. CAAP-19-0000068

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF SK, LK JR., SKF, LK

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 17-00094)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Father-Appellant (**Father 1**) appeals and Mother-Cross-Appellant (**Mother**) cross-appeals from a January 18, 2019 Order Terminating Parental Rights, issued by the Family Court of the First Circuit (**Family Court**).[1] The Family Court terminated Father 1 and Mother's (collectively, **Parents**) rights to their children, SK, LK Jr., and LK (**Father 1's Children**), and Mother's rights to her child with Father-Appellee/Cross-Appellee (**Father 2**),[2] SK-F (children identified above collectively referred to as **Children**). The Family Court awarded permanent custody of Children to Appellee/Cross-Appellee Department of Human Services (**DHS**), and ordered a permanent plan with a goal of having the Children adopted by their resource caregivers (**Resource Caregivers**).

Father 1 argues the Family Court erroneously concluded he was unable and unwilling to provide a safe family home for Father

---

[1] The Honorable Bode A. Uale presided.

[2] The Family Court terminated Father 2's parental rights to SK-F. Father 2 does not appeal.

1's Children, even with the assistance of a service plan, and would not become able and willing to do so within the foreseeable future. He maintains that the Permanent Plan, with the goal of adoption by the current Resource Caregivers, is not in Father 1's Children's best interests. Related to these points is Father 1's contention that in the Family Court's Findings of Fact and Conclusions of Law (**FOF/COL**), Findings of Fact (**FOFs**) 28, 29, 33, 35, 98, 103, 105, 107, 108, 118, 120, 121, 126-28, and 131, part of FOF 104, and (**COLs**) 16-19 are clearly erroneous.

Mother argues that the Family Court erred in terminating her parental rights to Children where there was insufficient evidence that her oxycodone, cocaine, and alcohol abuse presented a threat of harm to Children, DHS did not make reasonable efforts to reunify her with Children because DHS failed to provide her with services for six months while Children were in foster custody, and the Family Court erred by not giving her more time to demonstrate sobriety. Related to these points is Mother's contention that the FOF/COL, FOFs 34, 35, 71, 72, 74, 77, 79, 82, 83, 85, 86, 90, 94, 97, 124-29, and 136 and COLs 17 and 19 are clearly erroneous, and COL 14 is wrong.

## I. Father 1's Appeal

### A. The Family Court did not clearly err by concluding that Father 1 was unwilling and unable to provide a safe family home, even with the assistance of a service plan, and would not become willing and able to do so within a reasonable amount of time.

We reject Father 1's contention that the Family Court clearly erred by concluding he was unwilling and unable to provide a safe family home for Father 1's Children, even with the assistance of a service plan, and would not become willing or able to do so within a reasonable amount of time. We also reject his related argument that FOFs 98,[3] 103, 105, 107, and 108,[4] part of

---

[3] FOF 98 provides:

> [Father 1]'s primary problems/safety issues that subjected his three children to harm and/or threatened harm and

(continued...)

2

104,[5] and COLs 16 and 17[6] are clearly erroneous.

        **1.    Father 1's incarceration was not the only reason the Family Court terminated his parental rights.**

While this case was proceeding, Father 1 was arrested and then incarcerated pending trial on two counts of Sexual Assault in the Third Degree (**Sex Assault 3**), for touching the private parts of his girlfriend's fourteen-year-old daughter. Citing to In re Doe, 100 Hawai'i 335, 345, 60 P.3d 285, 295 (2002), Father 1 argues that

---

[3](...continued)
> prevents him from providing a safe home for them is his chaotic lifestyle, his relationship problems with [SK] and [LK Jr.], his lack of parenting skills, his being an admitted sex offender of a child, and his incarceration at the time of the December 19, 2018 trial.

[4]    FOFs 103, 105, 107, and 108 provide:

> 103.    Even if [Father 1] were sentenced to a period of probation on January 3, 2019 and released from incarceration, he will not be able to reunify with any of his three children at that time.
>
> . . . .
>
> 105.    At the time of the trial, due to his incarceration, [Father 1] was not able to provide a safe home for his children. Even if he were not incarcerated, [Father 1] would [sic] have been able to provide a safe home for his children.
>
> . . . .
>
> 107.    [Father 1] is not presently willing and able to provide his children with a safe family home, even with the assistance of a service plan.
> 108.    It is not reasonably foreseeable that [Father 1] will become willing and able to provide his children with a safe family home, even with the assistance of a service plan because even if [Father 1] were to suddenly change his long standing pattern of behavior, there is no likelihood that he would sufficiently resolve his problems at any identifiable point in the future.

[5]    Father 1 appears to contest the part of FOF 104 that provides, "[Father 1] would not be able to complete sex offender treatment and reunify with his children before the two-year anniversary of his children's May 22, 2017 date of entry into foster care: May 22, 2019."

[6]    COLs 16 and 17 provide:

> 16. [Father 1] . . . . [sic] not presently willing and able to provide [Father 1's Children] with a safe family home, even with the assistance of a service plan.
> 17.    It is not reasonably foreseeable that [Father 1] . . . . will become willing and able to provide [Father 1's] with a safe family home, even with the assistance of a service plan, within a reasonable period of time.

the sole basis for the TPR Motion was his incarceration, and a parent's incarceration cannot be the only reason for terminating their parental rights. He notes that before he was in custody, he was on track to reunify with Children 1.

Although incarceration does not mandate a per se forfeiture of parental rights, it "may be considered along with other factors and circumstances impacting the ability of the parent to remedy the conditions of abuse and neglect." Id. (Internal quotation marks and citation omitted). In FOF 98, in addition to Father 1's incarceration, the Family Court identified as Father 1's "primary problems/safety issues" his admission to sexually assaulting a child (he pleaded guilty to both counts of Sex Assault 3), relationship problems with SK and LK Jr., and lack of parenting skills.

As the Family Court found, before Father 1 was arrested for Sexual Assault 3, he "had completed services and the DHS was in the process of transitioning [Father 1's Children] to his care." However, the reunification process was derailed by Father 1's arrest and guilty plea in the criminal case. At trial in this case, K. Stacia Ohira (**Ohira**), who is employed by DHS as a human services professional in the field of child protective or welfare services, was designated by the Family Court as an expert in the field of child protective or welfare services. Ohira testified that it is a major concern when a parent sexually assaults someone who is the same age as the parent's child. At the time of the permanency hearing, SK was the same age or close to the same age as the sex assault victim in Father 1's criminal case.

Moreover, Father 1 testified that he had not been sentenced yet, but believed he would be given five years' probation in accordance with his plea deal and may be ordered to participate in a psychosexual risk assessment and sex-offender treatment. Father 1 testified that even if he was sentenced to probation and released from OCCC, he would be unable to reunify with Father 1's Children at that time and would still need to complete services in this case and possibly the criminal case. Ohira testified that even

4

if Father 1 were sentenced to probation, he would be unable to reunify by the two-year, statutory deadline,[7] which expired approximately five months after trial, because it would take him much longer than six months to complete sex-offender treatment. Ohira also testified that prior to Father 1's arrest, DHS was scheduling conjunct therapy sessions so Father 1, SK, and LK Jr. could repair the parent-child relationship and move toward reunification; however, conjunct therapy never occurred because Father 1 was arrested.

At the time of trial, SK was over fourteen years old and LK Jr. was twelve years and nine months old. The Family Court found, and it is not disputed, that SK and LK Jr. did not want to be reunified with their parents and they both consented to the permanent plan with the goal of adoption by Resource Caregivers. See HRS § 587A-33 (2018) (providing that at a termination of parental rights hearing, one factor the court should determine is whether "[t]he child consents to the permanent plan if the child is at least fourteen years old . . ."); HRS § 587A-21(d) (2018); HRS § 578-2(a)(8) (2018) (providing that among the individuals from whom a court should obtain consent for a petition to adopt a child is "the child to be adopted if more than ten years of age, unless the court in the best interest of the child dispenses with the child's consent.").

In this case, although Father 1 finished services and was on track to reunify with Children 1 before he was arrested, sufficient evidence was presented at trial that Father 1's "primary problems/safety issues" which had been identified by DHS remained at issue and they could not be resolved in a reasonable time period, particularly within two years of the Children entering foster care.

---

[7] Under Hawaii Revised Statutes (**HRS**) § 587A-33(a)(2) (2018), at a termination of parental rights hearing, the Family Court shall determine whether "[i]t is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care." (Emphasis added.)

### 2. The Family Court did not err by failing to give Father 1 more time to reunify.

Father 1 argues that he should have been given more time to reunify with Father 1's Children. He maintains that once he was released from custody in his criminal case, five months of the two-year statutory maximum remained in the instant case, and he could have achieved reunification in that time. However, as discussed, the evidence showed that Father 1 would be unable to reunify until he completed services in both cases, which he very likely could not do until long after the statutory deadline in this case passed. The Family Court did not err by failing to give Father 1 more time to reunify.

### B. Father 1 does not demonstrate the Family Court clearly erred by finding DHS made reasonable efforts to reunify him with Father 1's Children.

Father 1 argues that DHS should have exercised its discretion to extend the two-year statutory period, and because DHS did not do so, DHS did not make reasonable efforts to reunify him with Father 1's Children. Related to this point is Father 1's contention that FOFs 126-128[8] are clearly erroneous.

Two years is the maximum amount of time within which a parent must become willing and able to provide a safe family home. See HRS § 587A-33(a)(2). Once DHS determines the criteria for terminating parental rights is present, nothing prevents DHS

---

[8] FOFs 126-128 provide:

> 126. Under the circumstances presented by this case, the DHS has exerted reasonable and active efforts to reunify . . . [Father 1] . . . with [Father 1's Children] . . . by identifying necessary, appropriate and reasonable services to address the identified safety issues (problems), and by making appropriate and timely referrals for these services.
> 127. Under the circumstances presented in this case, the DHS treated . . . [Father 1] . . . fairly and serviced the entire family intensely since the start of the instant DHS and Family Court intervention with this family.
> 128. None of the underlying facts and data upon which the DHS based its opinions, assessments and recommendations were shown to be unreliable or untrustworthy. The DHS' continuing assessments in this case were conducted in an appropriate manner.

from filing a motion to terminate parental rights. See HRS § 587A-31(h) (2018). Father 1 provides no authority to support his argument that DHS failed to make reasonable efforts to reunify him with Father 1's Children because DHS failed to extend the two-year statutory period, and we find none. FOFs 126-128 are supported by sufficient evidence and not clearly erroneous.

**C. Father 1 fails to demonstrate the Family Court erred by concluding that the Permanent Plan with the goal of adoption by Resource Caregivers was in Father 1's Children's best interests.**

Father 1 argues in a summary fashion that he "does not believe it is in [Father 1's Children]'s best interest to be adopted by [Resource Caregivers][.]" Related to this argument is his contention that FOFs 120 and 121[9] and COL 19[10] are clearly erroneous. Father 1 does not provide any discernible argument on this point, and it is waived. See Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7).

**D. Remaining Contested FOFs and COL**

Father 1 argues that FOFs 28 and 29[11] are clearly erroneous, but the FOFs accurately describe the contents of the January 15, 2019 Decision and Order and procedural history and are not clearly erroneous.

---

[9] FOFs 120 and 121 provide:

> 120. There are no compelling reasons/evidence why the goals of either legal guardianship or permanent custody is [sic] in the Children's best interests. Therefore, the goal of adoption is in the Children's best interests.
> 121. The Permanent Plan, dated July 27, 2018, is in the Children's best interests.

[10] COL 19 provides, "The Permanent Plan, with the goal of adoption, dated July 27, 2018, is in the best interests of the Children."

[11] FOFs 28 and 29 provide:

> 28. On January 15, 2019, the court entered its Decision and Order. The court entered HRS § 587A-33(a) findings; granted the DHS' Motion to Terminate Parental Rights; terminated the parental rights of [Parents] and [Father 2]; awarded permanent custody of the Children to the DHS; and ordered the permanent plan, with the goal of adoption.
> 29. On January 18, 2019, the court entered the [TPR Order] and the Letters of Permanent Custody.

Father 1 contests FOF 33[12] and 131,[13] which include credibility determinations, which we decline to review. See Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006). The rest of FOF 33 accurately summarizes Ohira's testimony and is not clearly erroneous.

Father 1 contests FOFs 35[14] and 118[15] and COL 18[16] but presents no discernible argument with regard to them, and the points are waived. See HRAP Rule 28(b)(7).

## II. Mother's Cross-Appeal

### A. The Family Court did not clearly err by finding Mother's substance abuse posed a threat of harm to Children.

Mother concedes that there was sufficient evidence to show she abused cocaine, oxycodone, and alcohol; however, she

---

[12] FOF 33 provides:

> Based on the credible expert testimony of [Ohira], the parents may participate in services and complete services without benefitting from services by failing to make necessary and appropriate lifestyle changes to allow the parents the ability to provide a safe family home for their children. Unless parents are sincerely motivated to make such changes, are honest and truthful in services regarding their problems, and gain insight into all of their behaviors that led to their causing their children to be harmed and/or subject to threatened harm, the parents will not be able to make the necessary and appropriate internal lifestyle changes to allow the parents to provide a safe family home for their children. The parents must demonstrate that they have addressed their safety issues (problems) in services and that they have made appropriate and necessary internal lifestyle changes to allow them to provide a safe family home for their children, and demonstrate the ability to sustain such changes over a period of time.

[13] FOF 131 provides, "[Father 1] is not a credible witness, unless otherwise stated above."

[14] FOF 35 provides:

> It is reasonable to look at a parent's history and patterns of behavior in assessing a parent's ability to provide a safe family home. A parent's history and patterns of behavior is an indicator of future behavior if the parent continues his or her historical patterns of behavior.

[15] FOF 118 provides, "Having made the 'parental unfitness' findings of fact, HRS § 587A-33(a)(1) and (2), the court makes the following findings of fact regarding the Permanent Plan, dated July 27, 2018, pursuant to HRS § 587A-33(a)(3)."

[16] COL 18 provides, "Having made conclusions of law pertaining to 'parental unfitness' pursuant to HRS § 587A-33(a)(1) and (2), the court makes the following conclusions of law regarding the Permanent Plan, dated July 27, 2018, pursuant to HRS § 587A-33(a)(3)."

argues that insufficient evidence was presented to show that her substance abuse posed a risk of harm to Children. She points out that according to her psychological evaluation, her parenting deficiencies likely stemmed from her chaotic and disruptive upbringing. She maintains that although LK was exposed to cocaine and oxycodone in utero, he showed no symptoms of drug exposure, and no reliable evidence was adduced to show that a parent's substance abuse per se is a safety issue. Related to this point is Mother's contention that FOFs 71, 72,[17] 74,[18] 90,[19] and 136[20] and COL 17[21] are

---

[17] FOFs 71 and 72 provide:

> 71. [Mother']s primary problem / safety issue that subjected her four children to harm and/or threatened harm and prevents her from providing a safe home for them is her untreated substance abuse. She exposed [LK] to cocaine and oxycodone in utero during her pregnancy. Her drug use subjected her children to her unstable and chaotic lifestyle, which is the cause of [SK] and [LK Jr.]'s negative feelings about her ability to provide a safe and stable home. Her untreated substance abuse also subjected the Children to threatened harm.
> 72. Based on the credible evidence in the record and drawing all reasonable inferences, as long as [Mother] does not address her untreated substance abuse, she will not be able to provide a safe home for her children, even if she were to participate and successfully complete other services. [Mother] must successfully complete all phases of substance abuse treatment, and demonstrate the ability to live a drug-free and sober lifestyle on a sustained and prolonged basis, by having negative drug urinalysis test results on a sustained and prolonged basis.

[18] FOF 74 provides, "[Mother]'s drugs of choice are cocaine and oxycodone, a form of OxyContin. According to [Mother], she uses cocaine for tooth pain, and uses oxycodone for back pain. However, she is not under the care of a dentist for the tooth pain or a physician for the back pain, and she does not have prescriptions for these drugs. She obtains the drugs illegally."

[19] FOF 90 provides, "Based on the credible evidence in the record, and drawing all reasonable inferences from the credible evidence, [Mother] will continue to pose a substantial foreseeable threat of harm to, and will not be willing and able to provide a safe home for, the Children as long as her untreated substance abuse problem continues to exist."

[20] FOF 136 provides:

> It is reasonable for [Ohira], testifying on behalf of the DHS and as an expert witness in the area of child protective and welfare services, to rely on the facts she used to provide the bases for her expert opinions. The facts she used to form her expert assessments and opinions are of the type reasonably relied upon by experts in her areas of expertise. Her testimony reflects the DHS' expert child protective and welfare assessments and opinions in this

(continued...)

clearly erroneous.

Mother does not indicate where in the record she objected to DHS's identification of her substance-abuse problem as a safety concern. In fact, at the adjudicatory hearing on DHS's Petition for Temporary Foster Custody, Mother, who was represented by counsel, stipulated to DHS's recommendation in its May 18, 2017 Family Service Plan that she undergo substance-abuse treatment because her unresolved substance-abuse issues were a safety issue. She never objected that substance-abuse treatment was unnecessary or inappropriate. Therefore, this point is waived. See HRAP Rule 28(b)(4).

Even if Mother had preserved this point, HRS § 587A-7(a)(7) (2018) ("Safe family home factors") provides that when deciding if it will terminate parental rights, the Family Court must take into consideration "[w]hether there is a history of substance abuse by the child's family[.]" Based on the plain language of the statute, a parent's substance abuse must be considered in assessing safety concerns. See In re Doe, 100 Hawai'i at 343 n.12, 60 P.3d at 293 n.12 (block quotation format and citations omitted) ("Where the language of a statute is plain and unambiguous, our only duty is to give effect to the statute's plain and obvious meaning."). Therefore, the Family Court did not clearly err by finding that Mother's substance abuse posed a risk of harm to Children, and FOFs 71, 72, 74,[22] 90, and 136 and COL 17 are not clearly erroneous.

B.     **The Family Court was not wrong to conclude that Mother failed to timely argue DHS did not give her a reasonable opportunity to reunify.**

Mother argues that the Family Court clearly erred by finding she failed to timely argue DHS did not make reasonable

---

[20] (...continued)
        case.

[21]   COL 17 provides, in relevant part, "It is not reasonably foreseeable that [Mother] . . . will become willing and able to provide the Children with a safe family home, even with the assistance of a service plan, within a reasonable period of time."

[22]   Mother does not actually argue that FOF 74 is clearly erroneous. Rather, she maintains it fails to support the finding that her substance abuse was a safety issue.

efforts to reunify her with Children. She asserts that after March 23, 2018, DHS stopped providing her with services, and she raised her objection at the first opportunity, a hearing on September 13, 2018. Related to this argument is Mother's contention that part of COL 14[23] is wrong.

In FOF 93, which Mother does not contest, the Family Court found:

> At all of the hearings before the September 13, 2018 hearing, [Mother] did not object to the finding that the DHS was making reasonable efforts to reunify the Children with her, and did not make a demand for services. Throughout the pendency of the case prior to September 13, 2018, [Mother] did not file any motions asking the court to compel the DHS to make timely referrals for services for her.

Although Mother argues that after March 23, 2018, there was no hearing until September 13, 2018, a transcript in the record on appeal shows that the Family Court held a periodic review/permanency hearing on March 29, 2018, at which Mother's counsel appeared and did not move the Family Court to compel DHS to refer Mother to services. Further, Mother does not contest that prior to the September 18, 2018 hearing, her counsel failed to file any motions to compel. See In re Doe, 100 Hawai'i at 338, 343-44, 60 P.3d at 288, 293-94. Given Mother's delay in raising the issue, plus the evidence showing she exhibited an unwillingness to participate in services, the Family Court did not err by finding that her demand was untimely, and the part of COL 14 that she contests is not wrong.

C. **The Family Court did not wrongly conclude that DHS made reasonable efforts to reunify Mother with Children and gave Mother a reasonable opportunity to reunify.**

Mother argues that the Family Court wrongly concluded DHS gave her a reasonable opportunity to reunify with Children. She

---

[23] The relevant part of COL 14 provides:

> [Mother] waived the defense at the termination of parental rights trial that the DHS did not make reasonable efforts to reunify her with her children and that the DHS did not give her a reasonable opportunity to reunify with her children by making timely referral for services, because she failed to make timely objections at all hearings prior to the September 13, 2018 hearing.

maintains that since DHS failed to refer her to any services between March 23 and October 31, 2018, DHS should have given her an equivalent additional amount of time to show she could maintain sobriety. Related to this point is Mother's contention that FOFs 97[24] and COL 19[25] are clearly erroneous and part of COL 14[26] is wrong.

We hold that FOF 97 and COL 19 are not clearly erroneous, the part of COL 14 Mother contests is not wrong, and the Family Court did not wrongly conclude that DHS made reasonable efforts to reunify Mother with Children and gave Mother a reasonable opportunity to reunify. The evidence shows that DHS referred Mother to numerous services to address her substance abuse, and Mother failed to participate in them. Mother disagrees and presents specific arguments with regard to the following FOFs concerning her participation in services.

FOF 77 provides, "In July 2017, [Mother] was again assessed for substance abuse treatment at Women's Way, but she did not follow-through with the requirements to be admitted into the program." It appears FOF 77 is clearly erroneous in part because according to Ohira's testimony and a September 13, 2018 Salvation Army Letter, Mother contacted Women's Way in July 2018, not 2017. However, the error is harmless because even without the erroneous date, there is sufficient evidence to support the Family Court's finding that Mother was unable and unwilling to provide a safe family home.

FOF 79 provides, "After [Mother] failed to participate in substance abuse treatment with Ho'omau Ke Ola in November 2017, the

_____

[24] FOF 97 provides, "It is not reasonably foreseeable that [Mother] will become willing and able to provide the Children with a safe family home, even with the assistance of a service plan because even if [Mother] were to suddenly change her long standing pattern of behavior, there is no likelihood that she would sufficiently resolve her problems at any identifiable point in the future."

[25] COL 19 provides, "The Permanent Plan, with the goal of adoption, dated July 27, 2018, is in the best interests of the Children."

[26] Mother contests the part of COL 14 providing, "Even if [Mother] had made timely objections, the credible evidence in the record shows that the DHS did make reasonable efforts and gave [Mother] the [sic] reasonable opportunity to reunify with her children."

DHS referred her to Hope, Inc. for substance abuse treatment, but [Mother] failed to follow-through with this referral."  FOF 79 is clearly erroneous in part because Ohira testified that Mother referred herself for substance abuse treatment with Hope, Inc. However, the error is harmless because even without the erroneous finding, there is sufficient evidence to support the Family Court's finding that Mother was unable and unwilling to provide a safe family home.

> FOF 82 provides:
>
> In October 2018, the DHS referred [Mother] to Hina Mauka for a substance abuse assessment and random drug urinalysis.  Hina Mauka made an appointment with [Mother] for the substance abuse assessment to be conducted on November 19, 2018. [Mother] failed to participate in the November 19, 2018 substance abuse assessment.

Mother argues she did not have sufficient contact with Hina Mauka in November 2018 to know that a substance abuse assessment was scheduled.  Mother's vague assertion is insufficient to overcome the evidence in support of the finding.

FOF 83 provides, "In the latter part of 2018, [Mother] contacted Women's Way for substance abuse treatment.  However, [Mother] did not follow-through with Women's Way."  Mother argues she attempted to follow through by repeatedly contacting the program in December 2018.  However, given Ohira's testimony that Mother failed to follow through and Mother's admission in her testimony that she failed to follow up when Women's Way did not call her back regarding scheduling, there was sufficient evidence to support FOF 83.

> FOF 85 provides:
>
> Throughout the pendency of this case, [Mother] failed to successfully complete a substance abuse treatment program, and has failed to demonstrate the ability to live a drug-free and sober lifestyle on a sustained and prolonged basis.  She has not had sustained and prolonged periods of testing negative during drug urinalyses or drug hair follicle tests (including not missing drug tests which were deemed to be presumptively positive test results for illicit drugs).

Mother argues that she testified she was clean and sober at the time of trial.  However, FOF 85 is supported by sufficient evidence in the record, the Family Court found Mother was not credible, and if Mother was sober at the time of trial, it would not contradict the finding.

Mother argues that FOF 86,[27] 94,[28] 124, and 126-28[29] are clearly erroneous where DHS made no efforts to refer her to services after March 23, 2018 and until October 31, 2018. However, a contact log admitted into evidence shows that DHS referred Mother to services during that time period and Mother either failed to comply or lacked the proper insurance.

D. **Remaining Contested FOFs**

Mother contests FOFs 34 and 35,[30] which accurately summarize parts of Ohira's testimony and are not clearly erroneous.

---

[27] FOF 86 provides, "[Mother]'s failure to participate in and successfully complete substance abuse treatment was the result of her own conduct, and not the result of the alleged failure of the DHS to refer her for substance abuse treatment in a timely manner."

[28] FOF 94 provides, "[Mother]'s testimony and representations that the DHS did not make timely referrals for services for her, including for substance abuse treatment, is not supported by the credible evidence in the record and is not credible."

[29] FOFs 124 and 126-28 provide:

> 124. Under the circumstances of this case, the DHS made reasonable efforts to prevent or eliminate the need to remove the Children from the family home.
> . . . .
> 126. Under the circumstances presented by this case, the DHS has exerted reasonable and active efforts to reunify [Mother] with the Children . . . by identifying necessary, appropriate and reasonable services to address the identified safety issues (problems), and by making appropriate and timely referrals for these services.
> 127. Under the circumstances presented in this case, the DHS treated [Mother] . . . fairly and serviced the entire family intensely since the start of the instant DHS and Family Court intervention with this family.
> 128. None of the underlying facts and data upon which the DHS based its opinions, assessments and recommendations were shown to be unreliable or untrustworthy. The DHS' continuing assessments in this case were conducted in an appropriate manner.

[30] FOFs 34 and 35 provide:

> 34. Based on the credible expert testimony of [Ohira], a parent's substance abuse impairs the parent's ability to provide a safe family home by placing the children at risk for threatened harm and/or neglect.
> 35. It is reasonable to look at a parent's history and patterns of behavior in assessing a parent's ability to provide a safe family home. A parent's history and patterns of behavior is an indicator of future behavior if the parent continues his or her historical patterns of behavior.

Mother contests FOFs 129 and 130,[31] in which the Family Court found Ohira credible and Mother not credible, respectively. Determining witness credibility is within the province of the Family Court. See Fisher, 111 Hawai'i at 46, 137 P.3d at 360. The FOFs are not clearly erroneous.

**III. Conclusion**

For the reasons set forth above, the Order Terminating Parental Rights issued by the Family Court of the First Circuit on January 18, 2019, is affirmed.

DATED: Honolulu, Hawai'i, February 18, 2020.

On the briefs:

Rebecca S. Lester,
Father-Appellant/Cross
Appellee.

Jacob G. Delaplane,
for Mother Cross-Appellant.

Patrick A. Pascual,
Julio C. Herrera,
Erin L.S. Yamashiro,
Erin K. Torres,
Deputy Attorneys General
Department of the Attorney
General, for Petitioner-
Appellee/Cross-Appellee.

Chief Judge

Associate Judge

Keith K Hiraoka

Associate Judge

---

[31] FOFs 129 and 130 provide:

129. [Ohira], testifying on behalf of DHS, is a credible witness.
130. [Mother] is not a credible witness.